CHARTER GAS-ENGINE CO. v. KELLAM et al.

(Supreme Court, Appellate Division, Third Department. January 14, 1903.)

1. SALES—GASOLINE ENGINE—WARRANTY—EXTENT.
　　Defendants wrote. plaintiffs, who were manufacturers of gasoline engines, that if plaintiffs would guaranty the engine to be 35 actual horse power, and to work satisfactorily in every respect as plaintiffs recommended it to do, they would confirm an order given therefor by a third party, etc. Plaintiffs wrote that they had entered the order, and that they guarantied the engine to be "35 actual horse power, each horse power being represented by 33,000 ft. lbs." A circular containing plaintiffs' decription of the engine stated that it was safe, reliable, and not dangerous. Held, that the specific guaranty as to horse power did not prevent the acceptance of the order from constituting a general guaranty that the engine was as recommended in plaintiffs' circulars.

2. SAME—CONSTRUCTION—EXPERT EVIDENCE.
　　In an action for the price of a gasoline engine, where the defense was a breach of warranty that the engine was safe and reliable, and defendants showed that the engine exploded on the first occasion on which it was attempted to run it, evidence by a properly qualified expert that the construction of the engine was such as to make it dangerous from the kind of explosion which occurred, was proper.

3. SAME—QUESTION FOR JURY.
　　The testimony raised a question for the jury as to whether the engine was properly constructed.

4. SAME—BREACH—WHAT CONSTITUTES.
　　A warranty by the manufacturer of a gasoline engine that it is safe, reliable, and can be run without danger, is broken by an explosion from an unknown cause.

Appeal from trial term, Schenectady county.

Action by the Charter Gas-Engine Company against Newton J. Kellam and another. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendants appeal. Reversed.

The plaintiff is incorporated under the laws of the state of Illinois, and doing business at Stirling in that state, engaged in the manufacture of gasoline engines. The defendants are copartners, doing business in the city of Schenectady in cutting and dressing stone. The F. R. Patch Manufacturing Company is a corporation of Rutland, Vt., who were furnishing to the defendants certain machinery for use in their business. At the request of the defendants, the Patch Manufacturing Company negotiated with the plaintiff for the purchase of a 35 horse power gasoline engine at the price of $950. During the negotiations the plaintiff sent to the Patch Manufacturing Company a circular which had upon it a picture of a gasoline engine and certain words descriptive thereof, among which were the following: "Safe," "simple," "reliable," "no danger." Upon said circular further appeared: "More economical than steam. More reliable than electricity. * * * Does not require an experienced man to set up and start, or a licensed engineer to operate. Always ready for use. No attention required after starting. When stopped,

expense ceases." Before the purchase was completed, the Patch Manufacturing Company turned the matter over to the defendants to make the purchase contract. They passed over to the defendants this circular, together with the correspondence which had passed between them and the plaintiff. Upon the 23d day of February, 1900, the defendants wrote to the plaintiff the following letter: "Gentlemen: We are in receipt of a letter from the F. R. Patch Mfg. Co., enclosing yours of the 20th inst. They advise us to order the engine direct from you. Now, this is exactly how the matter stands. We have relied entirely upon Mr. Patch's judgment in regards to power, as we think he had ought to know what is required to run his machines, and as gasoline engines are entirely unknown to us, further than hearing and reading and looking at catalogue and cuts of same. After considerable discussion about different makes, Mr. Patch has finally advised us to use your engine, and sent us a copy of his letter to you of the 17th inst. in which he stated that if the engine would do the work required, etc., that we would pay you according to a letter from you of some previous date, which as we understand is when it has proved to be what you recommend. * * * If you will give us a guarantee that your engine will drive 35 actual H. P. and work satisfactory in every respect, as you recommend it to do, we will hereby confirm the order, and pay you according to agreement, as we understand it, $950, 5 per cent. off, when the engine has been tested and fulfills your specifications. As you are strangers to us, we will ask that the full meaning of a guarantee be carried out. * * *" In reply to that letter, upon February 26th the plaintiff wrote to the defendants a letter, the material parts of which are as follows: "Gentlemen: Yours of the 23rd is received, in envelope postmarked the 24th, 4 p. m., and we have entered your order for our 35 actual H. P. Charter, which we will get up at the earliest possible date. We are exceedingly hard crowded, but will do the best we can by you, and will ship on or before March 15th. Your understanding of the matter is correct, and we guarantee that this engine gives 35 actual H. P., each horse power being represented by 33,000 ft. lbs. If you wish us to put this guarantee into a more definite form, we will gladly do so and in any shape you desire. * * *" The engine was thereafter delivered and received about the 4th of April. The machinery which was to be furnished by the Patch Mfg. Co. was delayed, and it was not until the 9th of June that it was all in condition so that the engine could be attached thereto and tested. About five o'clock that day, just after the engine was stopped, it exploded from the base. The engineer was injured, and a fire was caused which materially damaged the defendants' plant. Notice of the fact of the explosion was immediately telegraphed to the plaintiff. Thereafter, upon the 21st day of June, the plaintiffs were directed to remove their engine, or notified that it would be removed at their expense. The plaintiffs demanded pay for the engine, which was refused, and this action was brought to recover the purchase price. The answer in a general way denies the allegations of the complaint, and counterclaims for breach of warranty. The case was submitted to the jury, who returned a verdict for the plaintiff, and from the judgment entered upon that verdict, and the order denying a motion for a new trial, this appeal has been taken.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

W. W. Wemple (Alonzo P. Strong, of counsel), for appellant.
De Remer & Angle, for respondent.

SMITH, J.  The trial court has apparently held that the only warranty contained in the plaintiff's contract was a warranty that the engine was a 35 actual horse power engine, and further held that, if the contract be construed to contain a further warranty as to the qualities of the engine, there is no proof sufficient to authorize the jury in holding that such further warranty was broken. The contract is contained practically in the letters of February 23d and 26th.

Prior to the writing by the defendants of the letter of the 23d, the plaintiffs' circular was before them, in which they had in substance represented the engine as a safe one, involving no danger, one that "does not require an experienced man to set up and start, or a licensed engineer to operate." This letter stated that payment was to be made when the engine "has proved to be what you recommend," and stated that the order conditionally given by the Patch Company would be confirmed if the plaintiff would guaranty that the engine would "drive 35 actual H. P. and work satisfactory in every respect, as you recommend it to do." In the letter of the 26th, this order, as thus conditioned, seems to have been accepted. Otherwise the plaintiffs would not have entered it upon their books. The statement in the second paragraph of the letter of the specific guaranty as to this engine giving 35 actual horse power in no way negatives an intention on the part of the plaintiff to give the full guaranty which the defendants demanded. The specification of that particular guaranty may well have been made to emphasize what was deemed by the parties the most important part of the contract; or it may have been made to describe more specifically that part of the guaranty, as was done by the clause, "each horse power being represented by 33,000 ft. lbs." The statement of an express guaranty may at times negative an implied guaranty. The statement of a specific guaranty will not limit, however, a general guaranty demanded, unless the intention to so limit be clearly expressed. Here the order conditioned upon a general guaranty was in terms accepted. The defendants had represented themselves as entirely ignorant of gasoline engines, and the purchase was presumptively made upon the representations made by the plaintiffs in their letters and circulars, with the intention of inducing this particular purchase. It is no hardship on plaintiff to hold that these representations were made in good faith, and were intended to be included in the guaranty. The defendants endeavored to show that they relied upon these representations. This the court did not permit. Plaintiff's counsel seeks to justify this ruling upon the ground that the defendants in their letter stated that they relied upon the judgment of the Patch Company. But that was simply, as stated in the letter, as to the amount of power necessary to run the machinery. We are of opinion, therefore, that the trial court erred when it held that the guaranty was simply confined to a guaranty of power, and was not a general guaranty of the engine as recommended both in the letters and in the circulars of the plaintiff.

Assuming, then, that the plaintiffs by their contract guarantied the engine as represented, we think the court improperly held that there was no proof for the jury as to the breach of that guaranty, except upon the question of the power developed. That the explosion was not caused by any negligence on the part of the defendants' servants was at least a question for the jury. The engineer who ran the engine has sworn in detail to the management of the engine. That management has not been criticised either in the evidence or in the briefs. Nor can the plaintiff well complain that scientific care had not been given to it, after having represented that the engine "did not require an experienced man to set up and start, or a licensed

engineer to operate it." The claim of the plaintiff that the explosion may have been caused by dynamite or some other foreign substance put maliciously under the engine has not the slightest support in the evidence, and is in fact negatived thereby as well as by every presumption of law. The defendants' evidence is to the effect that there was no dynamite or other explosive substances around the shop which could have been used for that purpose, and there is hardly a suspicion of a motive shown for such an act. The defendants were held by the trial court with unusual strictness in their endeavor to prove, by witnesses who had at least some familiarity with the use of gasoline engines, that the engine was improperly constructed. The witness Moore was, we think, qualified to testify as an expert. He swore, in substance, that the construction of the engine was such as to make it dangerous from the kind of explosion which happened. It is true that this evidence was by the court stricken out. We think the evidence was competent, and that the exception to the ruling of the court was well taken. With that testimony in the case, at least, there would have been a question for the jury whether or not the engine was properly constructed. But in this case we can safely go further, and hold, where a manufacturer of an engine warrants that it is safe, reliable, and that it can be run without danger, that that warranty is broken by an explosion even from an unknown cause. The ruling of the court below that, as matter of law, a guaranty that the engine was safe and could be operated without danger had not been broken, was error, for which the judgment must be reversed and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.